DOROTHY L. KELLER et al., appellees, v. CITY OF COUNCIL BLUFFS, appellant.

No. 48493.

(Reported in 66 N.W.2d 113)

SEPTEMBER 21, 1954.

REHEARING DENIED NOVEMBER 19, 1954.

J. A. Williams, of Council Bluffs, and David E. Stuart, City Attorney, of Council Bluffs, for appellant.

Peterson, Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellees.

LARSON, J.—The City of Council Bluffs, Iowa, in the year 1927 adopted a comprehensive zoning ordinance under the authority and in accordance with the provisions of the Municipal Zoning law now known as chapter 414, Code of 1954. On June 27, 1949, the city council also passed an ordinance changing the

use classification of three lots in Morningside Addition from "A" Residential to "B" Residential District. For some time prior thereto the owners of the lots had operated the premises as a convalescent home caring for about thirty-four patients. A large house about fifty-five years old, four stories high, containing sixteen rooms was situated on parts of each of the three lots concerned. Zoning ordinance violation complaints by the plaintiffs, who reside next door, resulted in an official request to desist, an appeal to the Board of Adjustment, and an application for a change in the zoning law which was considered by the zoning commission. Upon their recommendation the city council considered and adopted the contested amendatory ordinance. On the basis that the council's action was unreasonable, arbitrary and an abuse of its discretion, and that the action amounted to illegal spot zoning, the trial court in this equity action held the amendment invalid and ineffective. The City appealed.

From the record we find Lots 13, 14 and 15, in Block 8, Morningside Addition, and the house thereon had been used as a medical clinic, apartments for from 3 to 5 families at a time, and as a boarding and lodging house, and convalescent home. It was never substantially used as a single family residence since prior to the comprehensive zoning ordinance enactment, and the plaintiffs had purchased and substantially improved their property next door knowing of the use then made of said property. Twenty-nine neighboring property owners had signed a petition for the change, and twenty-four persons owning property in that and adjoining additions had signed a resistance, all of which were before the zoning commission and the council in their deliberations. The record also discloses that in the past some fifty amendments had been made to the comprehensive zoning ordinance, ten of which were from "A" to "B"; this was the only convalescent home operated in a Class "A" Residential District, though there were twelve such operations in the city; this was the only departure from the Class "A" restriction in Morningside Addition, and its present owner had acquired the property in 1943 from a previous owner and operator of the home. Other relevant facts appear later.

I. The defendant contends plaintiff did not present an appropriate case for declaratory relief. We find no merit in

this contention. Rule 262, Rules of Civil Procedure, provides that any person may have determined "any question of the construction or validity" of any municipal ordinance whose right or status is affected thereby. The procedure for declaratory relief should be given a reasonably liberal construction. State v. Central States Elec. Co., 238 Iowa 801, 28 N.W.2d 457. In re Estate of Pierce, 245 Iowa 22, 31, 60 N.W.2d 894, 900, and citations, are other decisions to like effect. We think the case as presented is appropriate for declaratory judgment. C. K. Eddy & Sons v. Tierney, 276 Mich. 333, 267 N.W. 852; Clifton Hills Realty Co. v. Cincinnati, 60 Ohio App. 443, 21 N.E.2d 993; Donovan v. City of Santa Monica, 88 Cal. App. 2d 386, 199 P.2d 51.

II. The principal controversy is whether the city council exceeded its authority or discretion in the adoption of Ordinance 3235 amending the comprehensive zoning ordinance of the City changing the three lots, an area of about 125 feet square, from Class "A" Residential District, which limited the use of property to private dwellings for one or two families, churches, schools, libraries, farm and truck gardening, and accessory buildings, to Class "B" Residential District, which limited the use of property to Class "A" uses, multiple dwellings, boarding and lodging houses, hotels, hospitals and clinics, institutions of educational, philanthropic or eleemosynary nature, private clubs, fraternities and lodges, nurseries and greenhouses, and public garages. This precise question has not been passed upon by this court but has been given consideration in other jurisdictions.

The rule generally stated is that a city council does not have the authority to amend a comprehensive zoning law so as to remove or impose more or less onerous restrictions upon a small tract or lot similar in character and use to the surrounding property. Such action has been called an arbitrary and capricious abuse of the council's power and authority and is often designated as illegal spot zoning. This is particularly true if it bears no relation to a comprehensive city-wide plan.

It is within a council's power and authority, however, to decide whether or not the property so designated is similar in character and use to that of surrounding property, and when a

sufficient showing has been made to reasonably support its judgment, such discretion may not be superseded by the court's different conclusion.

There are other factors which may be considered, such as whether the action will increase the burden unjustly on the other surrounding property or be harmful to the health, safety and general welfare of the community, but in those matters again the council's discretion is controlling unless it is clearly shown to be arbitrary and capricious.

█ It is defendant's contention the amendment adopted by the council was not adverse to the interest of public health, safety, morals or general welfare, the council's action was not unreasonable and arbitrary nor did it amount to illegal spot zoning. Under the police power, zoning is a matter within sound legislative discretion and, if the facts do not show the bounds of that discretion have been exceeded, it must be held the action of the legislative body, here the council, is valid. Anderson v. Jester, 206 Iowa 452, 221 N.W. 354, and authorities cited therein; American Wood Products Co. v. Minneapolis, 8 Cir., Minn., 35 F.2d 657; Taylor v. City of Hackensack, 137 N. J. L. 139, 58 A.2d 788.

Zoning by municipalities finds its authority under chapter 414, Code of 1954, and we have had several occasions to discuss and consider the constitutionality of these statutes. As elsewhere, we have generally sustained them as a valid exercise of the police power "for the purpose of promoting the health, safety, morals, or the general welfare of the community * * * city or town * * *." Boardman v. Davis, 231 Iowa 1227, 3 N.W.2d 608; Anderson v. Jester, supra; Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 184 N.W. 823, 188 N.W. 921, 23 A. L. R. 1322; Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016.

Section 414.4, Code of 1954, permits the council from time to time to amend, supplement or change the regulations, restrictions and boundaries, and designates the procedure.

█ We are of the opinion the governing body of a municipality may amend its zoning ordinances any time it deems circumstances and conditions warrant such action, and such an amendment is valid if the procedural requirements of the statutes are followed and it is not unreasonable or capricious nor

inconsistent with the spirit and design of the zoning statute. The burden is upon the plaintiffs attacking the amendment to establish that the acts of the council were arbitrary, unreasonable, unjust and out of keeping with the spirit of the zoning statutes. Taylor v. City of Hackensack, supra; Rodgers v. Village of Tarrytown, 302 N. Y. 115, 96 N.E.2d 731; Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Wulfsohn v. Burden, 241 N. Y. 288, 150 N.E. 120, 43 A. L. R. 651; Shepard v. Village of Skaneateles, 300 N. Y. 115, 89 N.E.2d 619.

There was no serious dispute regarding compliance with procedural requirements preliminary to the council's action and therefore our principal inquiry is as to the reasonableness of its action under the facts and circumstances here shown. In determining the reasonableness of a zoning classification or an amendment thereto each case must be determined upon its own facts. Anderson v. Jester and Boardman v. Davis, both supra; 62 C. J. S., Municipal Corporations, section 226 (12), page 468; Moreland v. Armstrong, 297 Mich. 32, 297 N.W. 60; City of Omaha v. Glissmann, 151 Neb. 895, 39 N.W.2d 828. The facts and circumstances here were apparently carefully considered by both the zoning commission and the city council. The action was recommended and passed by a 7 to 1 vote of both bodies.

The defendant contends and the facts tend to show the huge structure located upon the concerned lots has little or no appeal to a present day home owner, and about the only beneficial use that could be made of these premises was as a nursing home, an apartment house, fraternity, or other multiple dwelling, all of which were prohibited in a Class "A" district. The record discloses difficulty in obtaining any permanent use of the property for many years and we have already referred to its past uses in those years. It had become run down and was an eyesore before it was beneficially used as a convalescent home sometime in the 1930s. It has received substantial repairs since then though no structural changes were made. A rather ugly outside wooden stairway or fire escape was added in the back during the war years, no doubt as required by the State Fire Marshal, when steel could not be obtained.

Was there sufficient showing the council could reasonably find this building could not be practically used as a private dwelling, and that its compelled vacation would not be for the best interest of the health, safety and general welfare of that community? We believe there was. To allow development and usability of otherwise unmarketable and decaying property in the district cannot be said to be against the general welfare of the city. As heretofore pointed out, such discretion is lodged in the city council, and its discretion is controlling if not unreasonable and arbitrary. Anderson v. Jester and Boardman v. Davis, both supra; Gorieb v. Fox, 274 U. S. 603, 47 S. Ct. 675, 71 L. Ed. 1228, 53 A. L. R. 1210; Metzenbaum, The Law of Zoning, page 77.

In the Boardman case, 231 Iowa 1227, at page 1230, Judge Oliver cited from the Gorieb case a statement much in point: " '* * * city councils, who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions require; and their conclusions should not be disturbed by the courts unless clearly arbitrary and unreasonable.' "

The original zoning ordinance clearly relegated this property to a single purpose for which it was and continued to be unfit and therefore almost useless. It seems only reasonable the council should be able to reclassify those portions of the neighborhood under the statutory enactments. In fact, it may be important that such authority as well as duty exists in that body in order to make a zoning law constitutional. Granger v. Board of Adjustment of City of Des Moines, 241 Iowa 1356, 44 N.W.2d 399. Property cannot be confiscated under the guise of police power. Thus an ordinance may be valid in its general aspect and at the same time be clearly arbitrary and unreasonable as applied to a particular state of facts. Anderson v. Jester, supra; Koch v. City of Toledo, 6 Cir., Ohio, 37 F.2d 336. It does not seem unreasonable under the facts shown here to make a finding that by the comprehensive zoning law of 1927 practically all beneficial use of this property was forbidden. We think the trial court should have favorably considered the exercise of the council's

discretion under these facts to correct the oversight, if not the illegality, as to this property attempted in 1927.

We are not favored with an explanation of why this matter was not passed upon by the Board of Adjustment for it was clearly within its jurisdiction. The Council Bluffs comprehensive ordinance of 1927 recognized and provided relief for such hardship cases by subsection 8 of section 17 thereof which provides: "To authorize upon appeal in specific cases such variances from the terms of the ordinance as will not be contrary to public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." See Zimmerman v. O'Meara, 215 Iowa 1140, 245 N.W. 715.

Section 414.3, Code of 1954, provides the guide as to the spirit of our zoning laws as follows: "* * * Such regulations shall be made with reasonable consideration, among other things, as to the character of the area of the district and the peculiar suitability of such area for particular uses, *and with a view to conserving the value of buildings* and encouraging the most appropriate use of land throughout such city or town." (Emphasis ours.)

The spirit of a zoning ordinance is not violated nor is it inconsistent with a comprehensive zoning ordinance to grant a just and reasonable exception by amendment based upon the character and use of property not similar to other property in the district, but is now and was distinguishable before the adoption of the comprehensive zoning ordinance. The lots here involved are different in situation and usability, and that is important, for the statute contemplates the same careful, serious and intelligent consideration of an amendment to a zoning ordinance as in the preparation and enactment of an original ordinance on zoning. Michigan-Lake Bldg. Corp. v. Hamilton, 340 Ill. 284, 172 N.E. 710.

So if the only reasonable use of the property is seriously affected by the zoning ordinance, the owner should be entitled to relief, and, in addition, if the legislative body under any reasonable interpretation of the facts could say there was such an interference with that use, its action could not be held arbitrary,

unreasonable and discriminatory. See Eggebeen v. Sonnenburg, 239 Wis. 213, 1 N.W.2d 84, 138 A. L. R. 495, where in a well-reasoned decision the action of the council was upheld in rezoning a small tract of land surrounded by a residentially restricted area in order that it could be used for apartment houses. The soil was shown there to be unsuitable for private home foundations due to the excessive costs of adequate footings. Unless then the public welfare is otherwise seriously affected by such a change, we believe substantial justice will be obtained by adopting that reasoning here.

In Ellicott v. Mayor and City Council of Baltimore, 180 Md. 176, 23 A.2d 649, the court held a city council has the power to make an exception to the zoning ordinance to relieve a certain lot from a restriction, applicable to the use district where the exception is required, either by the peculiar condition of the lot, or the public good.

Also in Mueller v. Hoffmeister Undertaking & Livery Co., 343 Mo. 430, 121 S.W.2d 775, the court determined the board of aldermen of St. Louis properly found in the passage of the blanket zoning ordinance it had erroneously included certain property within a residential zoning district, whereas it should have been included in an adjoining commercial district, and the board was possessed of the power and authority to correct its error by passing the amendatory ordinance.

The many cases which we have examined which have treated zoning questions have gone on the theory that the division of cities into zoned districts has contributed to the welfare of the communities, and the burden as far as possible must be equally distributed, *at least as to properties similarly situated, adaptable and used.*

In the Matter of Eaton v. Sweeny, 257 N. Y. 176, 183, 177 N.E. 412, 414, the court said: "Hardships and difficulties there will be and many annoyances; these usually follow any restriction upon the free use of property. When, however, the adjustment becomes so one-sided as to be unreasonable and arbitrary, unnecessary to the preservation of the scheme and purpose as a whole, approaching the point where an owner is deprived of any beneficial or profitable use of his property, then the court should step in and afford relief." See also Arverne Bay Construction

Co. v. Thatcher, 278 N. Y. 222, 15 N.E.2d 587, 117 A. L. R. 1110; State ex rel. Tingley v. Gurda, 209 Wis. 63, 243 N.W. 317; Huebner v. Philadelphia Sav. Fund Soc. (1937), 127 Pa. Sup. 28, 192 A. 139.

The district court's opinion that the amendment was not proper is based principally upon the idea that those who purchased or improved private dwellings in the surrounding neighborhood relying on the classification of this property as "A" Residential acquired certain rights of which they would now be deprived under the amending ordinance. Much evidence was produced tending to show the value of surrounding properties and the amounts expended by plaintiffs in remodeling and improving their property next door. However, no appreciable injury to the neighborhood is here apparent. To the contrary, property values were shown to be high and they remained so during the many years this home was in operation. In fact, plaintiffs' additions costing some $40,000 were made with knowledge of the existence of this nonconformity. There was no showing of appreciable loss of value of surrounding property due to the operation of the nursing home, although some witnesses thought its presence would damage the loan values. No specific instances of its having done so were related. It is also true there were some instances of personal annoyances in the neighborhood caused by old people wandering from these premises, but they produced no serious consequence and were of no real danger to the community. While the plaintiffs themselves may suffer some annoyances next door, they have no legally protectable rights due to their reliance on the zoning ordinance. Page v. City of Portland, 178 Ore. 632, 165 P.2d 280.

The theory of vested rights under an ordinance overlooks the fact that rights granted by legislative action under police power can be taken away when in the valid exercise of its discretion the legislative body sees fit. Property is always held subject to the police power. Anderson v. Jester and Des Moines v. Manhattan Oil Co., both supra; Bassett on Zoning, pages 32, 108, 178; Piper v. Ekern, 180 Wis. 586, 194 N.W. 159, 34 A. L. R. 32.

The theory of vested rights relates only to such rights as an owner of property may possess not to have his property

rezoned after he has a building permit and has started his construction or improvement. The rationale of such cases is that he has incurred obligations or liabilities for the work which he could not escape, and of these costs he would be deprived by such a rezoning. See Smith, Zoning Law and Practice, page 43; Lindemann v. City of Kenosha, 206 Wis. 364, 240 N.W. 373; Crow v. Board of Adjustment of Iowa City, 227 Iowa 324, 288 N.W. 145.

III. Objection is made to zoning this particular area as Class "B" Residential District when it is entirely surrounded by a Class "A" Residential District, on the ground it is "spot zoning" and therefore to be condemned and declared invalid. It is true the piecemeal method of altering zoning ordinances may be unsatisfactory in practice because it departs from the ideal, but it may be the only way of protecting rights which in equity must be recognized. Plaintiffs cite many cases which announce the principle there can be no singling out of one or more lots for different treatment from that accorded to similar surrounding land indistinguishable from it in character, all for the economic benefit of the owner of that lot or lots. Town of Marblehead v. Rosenthal, 316 Mass. 124, 55 N.E.2d 13. We do not disagree with that principle, but such cases are not in point. Action of imposing restrictions that do not bear alike on all persons living in the *same territory under similar conditions and circumstances* is discriminatory and will not be upheld. Page v. City of Portland and Rodgers v. Village of Tarrytown, both supra; Cassel v. Mayor and City Council of Baltimore, 195 Md. 348, 73 A.2d 486, 489; Mueller v. Hoffmeister Undertaking & Livery Co., supra. That a zoning statute must be impartially applied as to all properties *similarly situated* is beyond dispute. Here, as we have pointed out, the property is not similarly situated and is distinguishable by its past use and character from other surrounding property, and therefore the amendment does not violate the rule announced in those cases.

"Spot zoning" when construed to mean reclassification of one or more *like tracts* or *similar lots* for a use prohibited by the original zoning ordinance and out of harmony therewith is illegal. When done under certain other conditions and circumstances in accordance with a comprehensive zoning plan such

action will not be declared void. It depends upon the circumstances of each case. Higbee v. Chicago, B. & Q. R. Co., 235 Wis. 91, 292 N.W. 320, 128 A. L. R. 734. Courts have upheld amendments where established though they might appear out of harmony with the general plan, because they did no violence to the spirit and intent of the general zoning ordinance. 1 Zoning Law and Practice, Second Ed., by Yokley (1953), page 202. Also see Ellicott v. Mayor and City Council of Baltimore, 180 Md. 176, 23 A.2d 649, 652; Dowsey v. Village of Kensington, 257 N. Y. 221, 177 N.E. 427, 430, 86 A. L. R. 642.

Many cases cited by plaintiffs are bottomed upon failure to show a change in the neighborhood which justified the amendment and they also are not applicable here. There was no claim of justification due to change in the neighborhood made, but on the contrary the record indicates a continuing nonconforming use. The rule is quite well stated, we think, in 62 C. J. S., Municipal Corporations, section 226(12), a(b), page 468: "The reclassification of certain property for a use different from that of the surrounding area is not invalid where such property was subject to a nonconforming use, the effect of which was the same as though the property had been originally classified for the use to which it was subsequently changed. * * *." Chayt v. Maryland Jockey Club, 179 Md. 390, 18 A.2d 856. Also see 58 Am. Jur., Zoning, section 39, page 965; section 98, page 998; section 102, page 1000.

The better rule, we think, is that there must be substantial and reasonable grounds or basis for the discrimination, when one lot or tract is singled out in an amendatory ordinance removing therefrom restrictions imposed upon the remaining portions of the same zoning district. Polk v. Axton, 306 Ky. 498, 208 S.W.2d 497. When the tract is shown to be clearly different in character or use from those around it, discrimination may be legally justified.

Davis v. City of Omaha, 153 Neb. 460, 45 N.W.2d 172, and Pettis v. Alpha Alpha Chapter, 115 Neb. 525, 213 N.W. 835, cited by plaintiffs, invalidate amending zoning ordinances. Both were determined on a proposed *new use* of the rezoned property inconsistent with property of a similar character within the neighborhood and zoned district. Neither is similar to the case at

bar, and we do not disagree with the principle of law therein declared. In neither of these cases was there an attempt to legalize a right of occupancy which had accrued and been maintained before the original zoning ordinance became effective, nor was the use or character of the property such as to fall in a special hardship category.

We are convinced under the facts here that the action of the council did not amount to illegal spot zoning. While the premises had some value and use as a residence was possible, it would be impracticable, expensive and unsatisfactory. While its value is not entirely destroyed by enforcement of the original ordinance, it is substantially so, and to a great degree devaluated. It is not necessary that it be completely destroyed to be entitled to relief. Eggebeen v. Sonnenburg, supra, 239 Wis. 213, 1 N.W2d 84, 138 A. L. R. 495. We subscribe to that rule, and hold it is sufficient for amendatory action by the council if the property value is substantially depreciated by the burdensome comprehensive zoning restrictions and no substantially new burden is thereby placed upon the surrounding property. See Taylor v. Village of Glencoe, 372 Ill. 507, 25 N.E.2d 62.

No substantially new burden is imposed upon adjoining property owners by this amendment for the nursing home had been in existence for many years. The action of the council was not shown to have been discriminatory without justification, unreasonable or arbitrary. Judgment reversed and cause remanded with directions to enter judgment holding the amending ordinance to be valid and effective.—Reversed.

All JUSTICES concur.